IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

MICHAEL HAFKEY, Derivatively on          )
Behalf of RESOURCE CAPITAL CORP.,        )
                                         )
          *Plaintiff*,                   )
     v.                                  )          Civil No. 17-cv-02604-GLR
                                         )
COHEN, *et al.*,                         )
                                         )
          *Defendants*.                  )
                                         )

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY**

## TABLE OF CONTENTS

Table Of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT................................................................................................................5

     I.     Standard ...........................................................................................5

     II.    This Action Is Not Duplicative Of The SDNY Actions ...........................................6

         A.     Plaintiff's Allegations On The Threshold Issue Of
               Demand Refusal Are Distinct....................................................................6

         B.     Dismissal Of The SDNY Actions Would Not Preclude This Action ..........9

     III.   Applying A "First-Filed" Rule Here Does Not Serve Public Policy......................10

     IV.   The Action Should Proceed In Maryland ..............................................................11

CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Auerbach v. Bennett,*
    47 N.Y.2d. 619 (1979) ........................................................................................................8

*Bender v. Schwartz,*
    917 A.2d 142 (Md. Ct. Spec. App. 2007) .......................................................................8

*Boland v. Boland,*
    31 A.3d 529 (Md. 2011) ............................................................................................6, 8

*CACI Int'l v. Pentagen Techs. Int'l,*
    1995 U.S. App. LEXIS 32067 (4th Cir. Nov. 16, 1995) ...............................................10

*In re Sonus Networks, Inc.,*
    499 F.3d 47 (1st Cir. 2007) ............................................................................................10

*Kamen v. Kemper Fin. Servs.,*
    500 U.S. 90 (1991) ..........................................................................................................6

*Newbrough v. Piedmont Reg'l Jail Auth.,*
    822 F. Supp. 2d 558 (E.D. Va. 2011) ..............................................................................6

*North v. McNamara,*
    47 F. Supp. 3d 635 (S.D. Ohio 2014) ............................................................................12

*PBM Nutritionals, LLC v. Dornoch Ltd.,*
    667 F. Supp. 2d 621 (E.D. Va. 2009),
    *motion granted in part, denied in part sub nom.,*
    *PBM Nutritionals, LLC v. Ace Am. Ins. Co.,*
    C.A. No. 3:09cv194, 2010 U.S. Dist. LEXIS 17868 (Mar. 1, 2010) ...............................5-6

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ...................................................................................................11-12

*Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC,*
    2009 U.S. Dist. LEXIS 82574 (D. Md. Sept. 10, 2009) .............................................10, 11

*Scalisi v. Grills,*
    501 F. Supp. 2d 356 (E.D.N.Y. 2007) ............................................................................8

*Schmidt v. Am. Inst. of Physics,*
    322 F. Supp. 2d 28 (D.D.C. 2004) ................................................................................12

*Seidl v. Am. Century Cos.*,
    799 F.3d 983 (8th Cir. 2015) ..............................................................................7

*Shenker v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ....................................................................................8

*Spotswood v. Hertz Corp.*,
    2015 U.S. Dist. LEXIS 145370 (D.N.J. Oct. 26, 2015) ........................................12

*Summer Rain v. Donning Co./Publ'rs, Inc.*,
    964 F.2d 1455 (4th Cir. 1992) ............................................................................5

*In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*,
    167 A.3d 513 (Del. Ch. 2017). ..................................................................*passim*

*Werbowsky v. Collomb*,
    766 A.2d 123 (Md. 2001) ...........................................................................6, 7, 9

*Williford v. Armstrong World Indus., Inc.*,
    715 F.2d 124 (4th Cir. 1983) ..............................................................................5

## Rules

Fed. R. Civ. P. 23.1 ....................................................................................6, 9, 11

Fed R. Civ. P. 23.1(b)(3)(A) ..................................................................................6

Fed, R. Civ. P. 23.1(b)(3)(B) ................................................................................6

#2997709v.1

Plaintiff Michael Hafkey ("Plaintiff"), by and through his undersigned counsel, respectfully submits this opposition to Defendants' Motion to Stay.

## PRELIMINARY STATEMENT

This is a shareholder derivative action against certain current and former officers of ("Resource Capital" or the "Company"). Resource Capital is incorporated in Maryland, and the conduct of its officers and directors is governed by Maryland law. Prior to filing suit, Plaintiff followed the procedure required by Maryland law by serving a demand on the Company's Board of Directors (the "Board") and then diligently pursuing the demand in the subsequent months, even traveling to Philadelphia, Pennsylvania to meet with the Board's Demand Evaluation Committee ("DEC"). When the Board finally concluded its investigation and refused Plaintiff's demand, Plaintiff filed suit.

During the time that Plaintiff was serving his demand in February 2017, negotiating and meeting with the DEC in May 2017, and waiting for the Board to conclude its process on June 29, 2017, numerous other Resource Capital shareholders rushed into court and prematurely filed complaints. Between January 2017 and May 2017, fourteen actions were filed.[1] Of these, the only actions currently being litigated are the actions that were filed in the U.S. District Court for the Southern District of New York (the "SDNY Actions"). Plaintiffs, in half of the SDNY Actions, did not even bother to make a demand on the Board as required by Maryland law. Plaintiffs in the other SDNY Actions, made demands, but then rushed into court and filed complaints before the Board had responded to their demands. None of them met with the DEC

---

[1]  A fifteenth action was filed in New York state court on August 1, 2017. *Greff v. Cohen, et al.*, Index No. 655133/2017, Dkt. 1 (N.Y. Sup. Ct. Aug. 1, 2017). That action is not stayed, and the *Greff* plaintiff is the only shareholder other than Plaintiff who met with the DEC and allowed the Board to conclude its process prior to filing suit.

as Plaintiff did.  Defendants' motions to dismiss due to futility and proper demand refusal are currently pending in the SDNY Actions.

The question of whether demand was improperly refused under Maryland law is fact-intensive and is the threshold issue that decides whether a derivative action may proceed.  The difference in the facts of Plaintiff's complaint from the complaints in the SDNY Actions is likely outcome determinative.  Defendants, apparently preferring to litigate against the weaker, prematurely-filed complaints, now ask the Court to stay this action in favor of the SDNY Actions.  As discussed herein, the claims in this action are on different footing from those in the SDNY Actions and the claims in this action will not be precluded by a dismissal of the SDNY Actions. *See, In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, 167 A.3d 513 (Del. Ch. 2017), *infra*. Application of a first-filed rule in this situation, when the law demands that a shareholder conduct adequate pre-suit diligence, is at odds with the policies embodied by Maryland corporate law and incentivizes precisely the type of behavior that the corporate law seeks to prevent.  For these reasons and others discussed herein, Plaintiff respectfully requests that the Court deny defendants' Motion to Stay in its entirety.

## STATEMENT OF FACTS

Resource Capital is an entity incorporated under Maryland law.  ¶ 13.[2]  The Company describes itself as a real estate finance company that invests in commercial and residential real estate-related assets and commercial finance assets.  ¶ 1.  The Company's investments include positions in mezzanine loans.  *Id.*  One such position was a $41.1 million ownership interest in a mezzanine  loan backed by a portfolio of luxury hotels, including three hotels in Puerto Rico, that Resource Capital purchased in 2007 (the "Mezzanine Loan").  ¶ 2.  Almost from the time

---

[2]    Citations to "¶ _" refer to Plaintiff's Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty filed on September 7, 2017. ECF No. 1.

2

that Resource Capital purchased its position, the Mezzanine Loan's performance was in question. *Id.* Puerto Rico began suffering from a severe economic crisis in 2007, which affected, among other things, its hospitality industry. *Id.* In September 2012, the Mezzanine Loan was restructured to stop paying interest. *Id.* However, between October 2012 and August 2015, the defendants caused the Company's public disclosures to consistently refer to the Mezzanine Loan as "current" or "performing." *Id.* While disclosing the Company's exposure to loans in various parts of the United States, defendants completely concealed the Mezzanine Loan's exposure to the Puerto Rican economic crisis. *Id.*

On August 4, 2015, the defendants caused Resource Capital to disclose that the Company had "recognized an impairment of $41.1 million on [the Mezzanine Loan] representing $38.1 million in loan principal and $3.0 million accrued interest reversals, or $(0.29) and $(0.02) per common share, respectively." ¶ 3. According to the announcement, the Mezzanine Loan "was originally supported by a portfolio of 13 hotel properties, most of which were luxury brand hotels. The last three luxury brand hotel properties securing the loan are located in or near San Juan, Puerto Rico, and recent economic and credit disruptions in Puerto Rico resulted in events that caused the Company to determine that the loan should be fully reserved." *Id.* On this news, the price of Company stock fell significantly. *Id.*

Due to the drop in Resource Capital's stock price caused by revelation of defendants' deception, a securities class action was filed in the U.S. District Court for the Southern District of New York against the Company and four of the defendants named herein, *Levin v. Resource Capital Corp., et al.*, Case No. 1:15-cv-07081-LLS (S.D.N.Y.) (the "Securities Class Action"). ¶ 4. On October 5, 2016, U.S. District Judge Louis L. Stanton denied defendants' motion to

3

dismiss the Securities Class Action and held that the amended complaint filed by the plaintiffs in that case states a claim for securities fraud against all defendants. *Id.*

Denial of the motion to dismiss the Securities Class Action made it likely that the Company and its insiders would ultimately be held liable for the defendants' wrongdoing. ¶ 5. On February 10, 2017, Plaintiff served a litigation demand pursuant to Maryland law on the Board requesting that it investigate and hold accountable the current and former officers and directors responsible for the wrongdoing at issue in the Securities Class Action (the "Demand"). *Id.*

In response to the Demand, and demands received from other shareholders, the Board formed the DEC to investigate the claims and present its conclusions to the full Board. ¶ 6. In April 2017, after refusing other shareholder demands, the DEC invited plaintiff's counsel to discuss unique issues raised in the Demand. *Id.* On May 25, 2017, plaintiff's counsel met with the members of the DEC in Philadelphia, Pennsylvania, on June 1, 2017, the DEC recommended that the Board refuse the Demand, and on June 29, 2017, the Board advised plaintiff that it would not pursue the claims. *Id.*

The Board's response to the Demand did not follow the process required by Maryland law. ¶ 7. It failed to convene an independent committee to respond to the Demand,[3] even though more than half of the directors on the Board were targets of the investigation. *Id.* The DEC reached the facially implausible conclusion that, Judge Stanton's denial of the motion to

---

[3] The DEC is composed of directors implicated in the wrongdoing. Plaintiff, unlike any of the plaintiffs in the SDNY Actions, raised the DEC's lack of disinterest directly with the committee members, forcing the DEC to issue a refusal in which it reached the facially unsupportable conclusion that its members were disinterested in investigating claims against themselves. In any event, even if the DEC members were independent, which they were not, the DEC was not empowered to make a final determination regarding Plaintiff's demand. It only had the power to recommend a course of action to the entire, majority-interested Board.

4

dismiss the Securities Class Action notwithstanding, breach of fiduciary duty claims arising from the misleading disclosures lacked "any" merit. *Id.* The Board self-interestedly rubber-stamped that conclusion. *Id.* The Board's decision to do so, in the face of law holding that the facts alleged herein state a claim for securities fraud, was not a valid exercise of business judgment. *Id.*

The DEC's report recommending refusal of the Demand relies exclusively on its conclusory determination that breaches of fiduciary duties could not have occurred because, according to the DEC, Judge Stanton incorrectly applied the law. ¶ 8. Due to this incomplete process, in which it purports to substitute its self-interested judgment for that of a United States District Court Judge, the DEC failed to balance the chances of a recovery and amount of possible funds recoverable against the likelihood of liability in the Securities Class Action and the Board never evaluated whether it would be in the Company's financial interest to pursue the claims. ¶ 8. As a result, plaintiff's Demand was wrongfully refused and plaintiff should be permitted to maintain this action on behalf of Resource Capital and its absent shareholders. *Id.*

## ARGUMENT

### I.  Standard

The decision whether to stay litigation is inherent within this Court's discretionary power to control its own docket. *See Summer Rain v. Donning Co./Publ'rs, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992). The Fourth Circuit has explained that "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Assertions of harm with no evidentiary support are insufficient to carry this burden. "If hardship or inequity cannot be shown, a stay is not merited." *PBM Nutritionals, LLC v. Dornoch Ltd.*,

5

667 F. Supp. 2d 621, 631 (E.D. Va. 2009), *motion granted in part, denied in part sub nom.*, *PBM Nutritionals, LLC v. Ace Am. Ins. Co.*, C.A. No. 3:09cv194, 2010 U.S. Dist. LEXIS 17868 (Mar. 1, 2010); *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 588 (E.D. Va. 2011) ("equivocal assertions" that a stay would potentially facilitate settlement and failure to assert undue hardship or inequity, among other things, did not justify a stay).  Defendants fail to carry their burden.  A stay is not merited.

## II.  This Action Is Not Duplicative Of The SDNY Actions

### A.  Plaintiff's Allegations On The Threshold Issue Of Demand Refusal Are Distinct

The threshold issue in this action and the SDNY Actions is whether the plaintiffs complied with Fed. R. Civ. P. 23.1 in their complaints.  Rule 23.1(b)(3)(A) and (B) require that a plaintiff state with particularity "any effort by the plaintiff to obtain the desired action from the directors" prior to filing suit, and "the reasons for not obtaining the action."  A plaintiff must therefore allege with detail whether he made a demand for action on a corporate board or not, and assuming the Board did not take the action desired, why not.  The adequacy of a plaintiff's allegations of wrongful demand refusal is evaluated under the law of the state of incorporation of the company in question.  *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98-99 (1991). Accordingly, Maryland law governs the Rule 23.1 analysis in this action and the SDNY Actions.

Although defendants attempt to obscure this fact, all litigation to date in the SDNY Actions concerns compliance with Rule 23.1 under Maryland law.  One group of SDNY derivative plaintiffs made no demand on the Board prior to filing suit and claims that it is excused from doing so because a demand would have been futile.  Under Maryland law, the demand futility exception is "very limited."  *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001).  A dismissal of the demand futility actions will not preclude this action because Plaintiff

6

here made a demand. The second group of SDNY Actions was commenced by shareholders who made a demand on the Board, but filed suit before allowing the Board to respond, and claim that their demands were "functionally refused." Declaration of Mark Clifford in Support of Defendants' Motion to Stay, Ex. C at ¶¶ 268, 284, 317, 328. A dismissal of the demand refused action there also will not preclude this action because the plaintiffs filed their actions prematurely and the Board refused their demands after a different process. In sum, it is only Plaintiff's action that followed the Maryland process for full demand response prior to filing a complaint.

Determining whether Plaintiff's demand was wrongfully refused requires a detailed factual analysis under Maryland law. Under Maryland law, the business judgment rule generally insulates directors' business decisions from judicial review. *Boland v. Boland*, 31 A.3d 529, 548 (Md. 2011) (citations omitted). Critically, that protection "can be claimed only by 'disinterested directors whose conduct otherwise meets the tests of business judgment.'" *Boland*, 31 A.3d at 549 (citing *Werbowsky*, 766 A.3d at 138)). "'[D]irectors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'" *Seidl v. Am. Century Cos.*, 799 F.3d 983, 990 (8th Cir. 2015) (applying Maryland law) (quoting *Werbowsky*, 766 A.2d at 138). Further, under Maryland law, there is no presumption that directors reviewing a shareholder demand were disinterested. *Boland*, 31 A.3d at 550 n.25 (a shareholder of a Maryland corporation does not concede a board's independence by submitting a demand prior to filing suit).

When a shareholder shows that a board's investigation was not conducted independently, reasonably, or in good faith, the directors do not receive the presumptions of the Maryland

7

business judgment rule. *Boland*, 31 A.3d at 549 (to avoid the business judgment rule, "[a] shareholder may 'show either that the board or committee's investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment'") (citations omitted). "This approach, where courts defer to corporate decisions generally, but inquire into the method, process, and self-interest of the decision makers, applies 'to all decisions regarding the corporation's management.' In a derivative lawsuit, this includes a corporate decision on whether the case should proceed . . . .'" *Id.* at 549 (citations omitted).

Once demand is made, the board "must" conduct an investigation into the allegations of the demand, and "[i]f the corporation, after investigation, fails to take the action requested by the shareholder, the shareholder may bring a 'demand refused' action." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 423-24 (Md. 2009); *Boland*, 31 A.3d at 549. Although judicial review of demand refusal is limited to whether the board acted independently, in good faith, and within the realm of sound business judgment, "[t]he plaintiff may still allege, however, that the board in fact did not act independently or that demand was wrongly refused." *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007); *Boland*, 31 A.3d at 549. "[Q]uestions of good faith or conceivable fraud...would never be shielded by [the business judgment rule]." *Scalisi v. Grills*, 501 F. Supp. 2d 356, 361 n.8 (E.D.N.Y. 2007) (applying Maryland law and citing *Auerbach v. Bennett*, 47 N.Y.2d. 619, 635-36 (1979)).

Whether demand was properly refused therefore hinges on the application of Maryland law to the specific facts of the demand refusal. Neither group of SDNY plaintiffs followed the procedure required by Maryland law prior to following suit. The issue in the SDNY Actions is primarily whether the plaintiffs were justified in filing suit before obtaining a demand refusal from the Board. That is not an issue in this case. By contrast, Plaintiff's demand covered

8

different topics as evidenced by the different Board process in response, and Plaintiff permitted the process to occur as is strictly required under Maryland law:

> Before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains.

*Werbowsky*, 766 A.2d at 134. The facts under Rule 23.1 are therefore different in this action and the SDNY Actions and the analysis under Maryland law is also different. Far from duplicative, Plaintiff's action here followed the process required by Maryland law prior to filing suit, notwithstanding the race to the courthouse that was underway in the SDNY.

**B.    Dismissal Of The SDNY Actions Would Not Preclude This Action**

The plaintiffs in the SDNY Actions filed suit prematurely, without waiting for the Board to respond to their demands and without meeting with the DEC to alert the Board to the errors in its process. As a result, any dismissal of the SDNY Actions pursuant to Rule 23.1 will not preclude this action. *See Wal-Mart*, 167 A.3d 513 (dismissal of a prematurely filed derivative action will not preclude a subsequent action in which, prior to filing suit, the plaintiff observed the procedures necessary to overcome Rule 23.1).[4] The *Wal-Mart* opinion identifies the dynamic at play in this litigation:

> Once multi-forum derivative litigation is underway, or even just anticipated, defendants often have an incentive not to challenge adequacy in an initial derivative action (*e.g.*, if the plaintiff's demand futility allegations appear weak) in the hope of obtaining a favorable determination on demand futility to bar re-litigation of the issue in a later proceeding against a more formidable

---

[4]    Where Maryland law is silent, courts "ordinarily" look to Delaware law "for guidance." *Shenker*, 983 A.2d at 427.

9

adversary, *i.e.*, one who has undertaken additional due diligence and filed a more factually-developed pleading.

*Id.* at 528. "What can and does happen is that a second stockholder plaintiff will file a more refined complaint with more particularized allegations or more tailored legal theories after doing additional homework," after permitting the required process to conclude. *Id.* at 529-30 ("[i]n these cases, the second court presumably would be understandably cautious about following earlier rulings in cases brought by less prepared stockholders"); *accord In re Sonus Networks, Inc.*, 499 F.3d 47, 61 (1st Cir. 2007) (dismissal pursuant to Rule 23.1 is "a dismissal for failure to accomplish a precondition," and "dismissal for failure to satisfy a precondition to suit should not bar a subsequent suit in which the defect has been cured").

Defendants' focus on the fact that this action was filed subsequent to a number of prematurely-filed actions and involves similar parties is, in addition to self-serving, misplaced. Plaintiff here engaged in the process required by Maryland law and Rule 23.1 in good faith, giving the Board the time to respond to his demand and thereafter attempting to resolve disputes related to the Board's response through an in-person meeting. This action therefore stands on different footing than the SDNY Actions and will proceed even if the SDNY Actions do not.

## III.    Applying A "First-Filed" Rule Here Does Not Serve Public Policy

Defendants are incorrect that the Court should mechanically apply a "first-filed" rule to this case. In the Fourth Circuit, the first-filed rule is not automatic or mandatory. "[T]his Circuit has no unyielding 'first-to-file' rule . . . ." *CACI Int'l v. Pentagen Techs. Int'l*, 1995 U.S. App. LEXIS 32067, at *16 (4th Cir. Nov. 16, 1995). The rule is simply a "'principal of judicial administration'" that "'is not to be applied mechanically.'" *Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC*, 2009 U.S. Dist. LEXIS 82574, at *8 (D. Md. Sept. 10, 2009).

10

"'District Courts have always had the discretion to retain jurisdiction given appropriate circumstances ....'" *Id.* at *9.

Application of the first-filed rule here in favor of prematurely instituted and weaker actions does not serve the same goals as Maryland corporate law and Rule 23.1 seek to impose on derivative litigants. As explained in *Wal-Mart*, the race to the courthouse in derivative litigation causes tension between the policies inherent in Rule 23.1 and corporate law on the one hand, which require a shareholder to pursue a pre-litigation dispute resolution process with the Board, and the desire to preserve judicial resources by discouraging litigation from proceeding in multiple forums on the other:

> The tension between these policies in representative stockholder litigation involving multiple forums is heightened by the "fast-filer" phenomenon, where counsel handling cases on a contingent basis have a significant financial incentive to race to the courthouse in an effort to beat out their competition and seize control of a case, often at the expense of undertaking adequate due diligence.

*Wal-Mart*, 167 A.3d at 515. Applying a first-filed rule in this context encourages more prematurely filed complaints and favors defendants. A subsequently filed action that was initiated properly should not be required to yield to weaker, fast-filer cases. Such an application of the first-filed rule would be plainly at odds with the purposes of the demand requirement, and the Court should not use its discretion to apply the first-filed rule here.

## IV. The Action Should Proceed In Maryland

Defendants argue that Plaintiff's choice of this Court as the forum for his claims amounts to forum shopping. Maryland is the state of incorporation of Resource Capital and the claims are governed by Maryland law. The implication that somehow another federal court is a more appropriate forum to adjudicate complex claims under Maryland corporate law should be rejected. Maryland has a public interest "in having the trial of a diversity case in a forum that is

11

at home with the law that must govern the action . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); *see also North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014) ("there is a strong interest in having the trial of this case in a forum that is at home with the applicable law."). "Resolving this case is likely to involve interpretation of Maryland law. The District of Maryland is 'surely more familiar' than [the SDNY] with the application of Maryland law," so "the public interest is 'best served by having a case decided by the federal court in the state whose laws govern the interests at stake.'" *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 35 (D.D.C. 2004); *see also Spotswood v. Hertz Corp.*, 2015 U.S. Dist. LEXIS 145370, at *25 (D.N.J. Oct. 26, 2015) (transferring case to this Court where Maryland law governed because "'justice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law'").

The Maryland legislature and courts are responsible for creating and interpreting the State's corporate law, which is the source of the fiduciary duties at issue in this case. Not only are the fiduciary duties the subject of Maryland law, but so are all conceivable claims and defenses from the demand refusal through and including the merits question of whether defendants' bad acts might have been exculpable under Maryland law. If forum shopping is an issue on this motion, defendants are the transgressors insofar as they prefer a forum far from the source of applicable because they believe they are more likely to prevail against the weaker complaints filed there. This action is properly litigated in Maryland.

12

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny defendants'

Motion to Stay.

Dated: January 25, 2018

**TYDINGS & ROSENBERG LLP**

By: _/s/ Daniel S. Katz_
John B. Isbister, Federal Bar No. 00639
Daniel S. Katz, Federal Bar No. 01148
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, MD 21202
Telephone: 410-752-9700
Fax: 410-727-5460
jisbister@tydingslaw.com
dkatz@tydingslaw.com

OF COUNSEL FOR PLAINTIFF:

Robert I. Harwood
Matthew M. Houston
Benjamin I. Sachs-Michaels
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
(212) 935-7400

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 25, 2018, I caused a true and correct copy of

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay and Request for

Hearing to be served by the Court's electronic filing system upon all counsel of record.

/s/ Daniel S. Katz
Daniel S. Katz

14